Thank you very much, Judge Flaum, Judge Bower, and Judge Mannion. May it please the Court. This case presents two questions. The first of which is whether Mr. Lopez was convicted of a particularly serious crime as the immigration statutes use that term. For the reasons we'll discuss, he was not, and he is therefore entitled to apply for forms of discretionary relief that the agency didn't give him access to, like withholding of removal. The second question is whether he is entitled to relief under the Convention Against Torture. The reasons we'll discuss, he is, because the record establishes beyond doubt that he will face a serious risk of serious physical harm or death if he is returned to Mexico and to Acapulco, which is where he'll live. Start with the first issue. Under the immigration statutes, Mr. Lopez was not convicted of a particularly serious crime, and that is so for two reasons. First of all, the agency never relied on the fact that he was convicted of an aggravated felony, which is the government's near-exclusive justification for that conclusion here. Even if one were to examine the underlying argument the agency never relied on, the IAEA's order never says it's necessary to decide this question, but even if this court were to review it, it's pretty clear that Mr. Lopez's conviction under Indiana law is not for an aggravated felony as federal law uses that term. The reason for that is as the government concedes, the Indiana law criminalizes a great deal of conduct that the Controlled Substances Act does not, specifically the financing crimes that exist under Indiana law that Mr. Lopez was convicted of, but that do not exist, there is no analog under the Controlled Substances Act. And therefore, what you have to do is you have to examine the very limited set of documents that Shepard says is appropriate under the so-called modified categorical approach. When you examine those documents, things like plea agreement doesn't indicate which of the crimes he was pleading guilty to. When you look at the judgment of conviction, and all these documents are reproduced in a short appendix at the end of the opening brief, it doesn't give any indication of which crime he was convicted of. When you look at things like the eventual judgment past the judgment of conviction, none of these things indicate which subsection of the statute he was charged and convicted of. The only thing that even comes close, the thing the government relies on entirely, is the Indiana information, which says at the top that he's being charged with a violation of subsection B, which of course is a reference to all four of the crimes under A2, including the financing crimes. It then includes a statement by a police officer, a report of what he saw on the day that Mr. Lopez was arrested. He said, I was in a Kohl's department store parking lot, and I saw the following things. I affirm this under oath, and it's signed by a prosecuting attorney. Now this is, as this court described in Lewis, a police report under oath, nothing more and nothing less. And Lewis is a case about Indiana information, so it is particularly on point. The police officer's account of what he saw under Shepard does not come in as one of the categorical approach. And that is for lots of reasons. As DeKalb said, the Supreme Court said in DeKalb, what a police officer says he saw may turn out to be downright wrong. More importantly, a person doesn't plead guilty to a police officer's account of what he saw. He pleads guilty to elements of an offense. And it is quite irrelevant what really happened in that parking lot on that Kohl's on that particular day, because it's not a conduct-based inquiry. And so given that none of these documents indicate with the kind of conclusive significance that Shepard requires, none of them are conclusive judicial records, as Shepard puts it, none of them establish what he was convicted of. And so as a result, the default under Moncrief and all of the other categorical approach cases is that he was convicted of the least of the acts criminalized, which in this context would be the financing crimes, meaning he is not convicted of an aggravated felony under federal law. Now, as I said, the government defends this at some length, but the question is at some level somewhat academic, because the board's order could not be upheld under that basis no matter what. Because under Chenery and under this court's decision in Moeb and all of the other sort of black letter administrative law cases that are out there, you can't uphold a BAA order except on the grounds that the agency invoked. Typically the government is among the fiercest proponents of that rule, because it defends agencies' discretion to make determinations for themselves in the first instance. If that's so, then in this case, it doesn't even really matter if this court were convinced that he is an aggravated felon, because that wasn't the basis for the board's order. Now, the only other basis that the government invokes for finding that Mr. Lopez was convicted of a particularly serious crime, which is that under the board's decisions, there is a category of particularly serious crimes that are not aggravated felonies. Now, I would footnote this by saying, as we've noted in the briefs, we don't agree with that position. We understand that this court held in Ali that that is true, but we just want to sort of preserve our objection and would ask that this court, if necessary, address it in its opinion. But even if one takes that as a given, he has still not been convicted of a particularly serious crime. The reason for that is that, again, the board's order invokes matter of Y.L. as the basis for this is the kind of rule of decision we're going to use to determine that he was convicted of a particularly serious crime. The problem, as the government seems to recognize in their briefing, is that matter of Y.L. is completely inapplicable to crimes that are not aggravated felonies. And so the board's order has a self-contradictory quality to it. It says in one sentence, it is not necessary to decide whether he was convicted of an aggravated felony. And really, the very next paragraph begins with a discussion and detailed application of matter of Y.L. and all of the daunting six-point checklist factors that it enunciates. And it's just not applicable on these facts. It simply isn't. And given that, we really have no basis to uphold the board's order at all because, again, the particularly serious crime determination requires the weighing of what this court has called the multiple desiderata of all the things that might come in and all the things that might be relevant to a determination of whether, under all the facts and circumstances, this crime is particularly serious, though not an aggravated felony. When the board invokes a rule that is designed only for aggravated felonies, and matter of Y.L. is quite stark in its reasoning. It says, almost goes and says, all drug trafficking felonies are going to be particularly serious crimes per se. But I'm going to reserve this narrow category of cases because these are such serious felonies. There's this narrow category of cases where, if you can show all of these six things at a minimum, that is what the opinion says, if you can show these six things at a minimum, then maybe it's not a particularly serious crime. That bar is so high that it really did cause a prejudice here. Because if you just applied the sort of more general facts and circumstances test that the government concedes would be the correct one for this case, then you don't have this And as a result, the board's opinion can't be upheld on the ground that it applied the right legal rule because there's really no reading of this opinion that does anything other than apply matter of Y.L. It does not, as the government argues, just sort of mention it to indicate how seriously the agency takes drug trafficking crimes or anything like that. I mean, this is something like a short judicial opinion. It is applying the factors out of matter of Y.L. That seems perfectly evident. So given all of that, it seems from the record that Mr. Lopez is entitled to apply for forms of relief, particularly withholding of removal, that he did not have access to before the agency. And this court really doesn't have to go any further than that to remand the case. Briefly on the Convention Against Torture claim, I seem to be on my rebuttal time, but I'll say this briefly. The record evidence really does indicate that this is a person who will be subject to terrible harm if he is sent back to Mexico because he is gay and HIV positive. Relocation to Mexico City, which the government really hangs its hat on, is not realistic for him because he doesn't know anyone there. He has a terrible disease that is fatal if not treated, and he needs a support network. And the government really hasn't introduced any evidence about why that would be a realistic move for him, other than the fact that he moved once to the United States when he was 12. I do want to preserve some time for rebuttal, so I'll reserve the rest. All right. Thank you, Mr. Samuel. Ms. Gavis. May it please the Court, Andrea Givis on behalf of the Attorney General. This Court should dismiss Petitioner's claim for statutory withholding of removal under CAP because Petitioner is an aggravated felon. Secondly, this Court should deny Petitioner's deferral under CAP because he did not meet his burden of showing it is more likely than not he would experience torture in Mexico. Now, first, before we even dive into the particular serious crime issue, we must address removability. Removability here is that Petitioner is an aggravated felon. Now, DHS issued a final administrative removal order, which neither the board nor the immigration judge can review jurisdiction, has jurisdiction over. Therefore, that is why the board did not touch the issue of aggravated felony, because it knew it lacked the jurisdiction. But moving back to the aggravated felony, Petitioner is an aggravated felon. The Indiana statute is broader than the federal statute for drug trafficking, so we must look at the documents. We go to the documents. In Indiana, information is a charging document with the prosecutor attorney's signature, and that's on page 43, is what Petitioner's holdings had on, is the fact that there is police testimony and relies on Lewis. However, this information, Lewis is distinguishable because, first and foremost, what Shepard says is, Shepard List is designed to illuminate what the crime is that Petitioner has committed. We don't care if it's in the Kohl or Walmart department store. What we're looking for is what element would Petitioner fall under, and that is the knowingly deliver. Now, the fact that he also, excuse me, the second point of distinguishing Lewis is that in that case, the judge read in the facts of the case from a police report that was attached, possibly stapled, to an information. Now, our facts are on the information itself. It's on the face of the document and inherently more reliable. Therefore, Lewis is distinguishable. So Petitioner is removable as an aggravated felony. This is the first court that can review that. So when the board, now the immigration judge, in its decision, took DHS's statement that it is an aggravated felon and used the per se particular serious crime as well as the discretionary. It used both. The board, giving the benefit of the doubt to the alien, said, you know, we're not going to touch if this is an aggravated felon. We're going to look at matter of NAM factors, which is the discretionary particular serious crime determination. Now, yes, the board used cites to matter of YAL in its decision. However, it uses the language from matter of NAM saying the three factors to consider, the nature of the conviction, the type of sentence imposed, and the circumstances and underlying facts of the conviction. Now, matter of YAL predates matter of NAM. And yes, it has six criteria. But those six criteria could be used in the circumstances and underlying facts of the conviction. Now, when looking at the discretionary three factors for matter of NAM, the type of sentence, 20 years, the nature of the conviction, delivering the cocaine, this is all in the board's decision. And then it says the crime did not involve a small amount of drugs. The delivery was not casual. The applicant's involvement was not indirect or peripheral. Those are all going to the nature of the conviction. And I'm sorry, the underlying facts and circumstances of the conviction. And the board summarizes the last statement, we agree with immigration judge's determination that the conviction constitutes a particular serious crime in light of the nature of conviction and the underlying facts and circumstances. Now, even if this court were to agree with petitioner, but found petitioner removable as an aggravated felony, yes, it would be a Chenery violation to determine it was a per se particular serious crime. But the futility doctrine would apply because all you need for a particular serious crime to be per se is more than five years, this case involves 20 years, and an aggravated felony. So the question of particular serious crime, even if you use the discretionary or the per se, he is still a particular, he was still found to have a particular serious crime. Now, going to deferral of removal, in that situation, this petitioner must show it is more likely than not he will experience torture in Mexico. And under the regulation, you need to look at all evidence of the possibility of future torture. And then it cites four major things, relevant information regarding Mexico country conditions, evidence of past harm, possible relocation, and gross, flagrant, or mass violation of human rights. The last one is not applicable here. Now, yes, petitioner supplied evidence showing that he could experience harm in Mexico. He uses articles, some eight of those articles involve transgender individuals, which is not petitioner. However, he does not, the government also provided evidence, including the 2013 Human Rights Report, which showed how Mexico has laws protecting LGBT. It also talked about no complaints of human rights abuses in the first nine months. And it talks about how Mexico City has an annual gay pride parade of 80,000. And petitioner holds his hat on the fact that he cannot relocate to Mexico City because he has family in Acapulco. It is petitioner's burden to establish an ability to relocate. And not having someone, having a sister in Acapulco and not knowing anyone in Mexico City is not establishing his burden that he cannot relocate. And as for his evidence of past harm, which his court should also consider, he was nine or 10 years old, approximately, when he experienced two incidents, one from a boy named Julio and another incident, nine or 10 years old, which was 25 years ago. And notably, he has not even been to Mexico since 1991. Therefore, this court should find that petitioner is removable as an aggravated felon, that his 20-year conviction for drug trafficking was a particular serious crime, and that he has not met his high burden of more likely than not he would experience torture for deferral of removal. And if this court has no further questions. How much time has he served? Excuse me? How much time has he served in prison? His sentence was for 20 years, 10 of which was suspended. But according to the information we received from the Department of Homeland Security, Indiana has a rule where 50% of your sentence, so the 10 years, 50% can be cut for good time. So he's served about five years. He's currently in DHS custody because his earliest release date was 2013. Okay. All right. Thanks. Thank you. Thank you. Mr. Sandler. Thank you very much. Just really two brief points on rebuttal. First, on Kat, the idea that essentially every gay person in Mexico should have to move to Mexico City or risk torture is somewhat ridiculous. He knows no one there. The fact that there's a resort in Acapulco, which is in a gay tourist magazine, does not prove anything about the safety of that city. And the government really does rest almost their entire Kat case on the existence of Mexico City and his ability to move there. He has a terribly serious disease, knows no one, and hasn't been there in 20 years. It really is, there's no evidence that that would be a realistic option for him. Now as to the issue of the particularly serious crime, the only attempt that the government really makes to distinguish Lewis is that the probable cause affidavit was described in Lewis as attached rather than, as they say here, on its face. I can't see what difference that would make. Either way, it's the sworn statement of a police officer, which Lewis says is just a police report under oath. Where and on which page that affidavit appears really couldn't make less difference for the modified categorical approach. As for the matter of NAM, the way that you know, and the simplest way you know, that it is the DHS, that the board was not applying matter of NAM in this case, is that that case has a method. And the first thing it says you do is you look at the elements of the offense and see if it brings it within the category of a presumptively serious crime. The order here doesn't do that. The reason that it doesn't do that is because it's not applying matter of NAM. This is a decision and this is an order by the board applying matter of YL. It's really hard to read it any other way. And it is for the agency in the first instance, not this court, to say, well, we're sure it would qualify under matter of NAM anyway. The point of Chenery and the point of Moeb and all of the other cases that establish this principle is that the agency takes the first crack at that, not this court, no matter how good the government's sort of post hoc rationalizations for that outcome may be. The only other thing is they mentioned the final administrative removal order. This case, this court's decision in ECE, E-K-E, establishes pretty clearly that the, you know, this court has jurisdiction to consider this issue, the aggravated felony issue, when it reaches this court, even through the process here through a final administrative removal order. And the board's decision doesn't say we don't have jurisdiction to decide the aggravated felony question. It says we don't have to do that for other reasons. So again, that's just not really what the order says. I am over my time. If there are no questions, then we're prepared to submit. All right. Thank you. Apparently not. Thank you, Mr. Sam. Thank you.